OPINION OF THE COURT
Joseph J asp an, J.
The standard characterized as that of "Justice” is also described as the "equitable, the fair, the theory consistent *437 with good conscience” (Cordozo, Paradoxes of Legal Science, p 39).
In People v Jones (39 NY2d 694, 701), Chief Judge Breitel, in a dissenting opinion, wrote that: "While justice and law may not be coextensive, and indeed they are not, a divergence too great is not tolerable or acceptable under constitutional limitations based on due process of law, equal protection of the law, and cruel and unusual punishment. Margin for discrepancy there may be between law and justice but not an ocean’s breadth justified only by adherence to the letter.”
A motion in the instant case is designed to test the meaning and plastic quality of that constitutional limitation by measuring the gap between law and justice as applied to this case.
The defendant Peter Catalano and three others were charged in a single indictment with criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree involving slightly less than four ounces of cocaine, both class A-I felonies at the time. By amendment effective September 1, 1979 (L 1979, ch 410, § 15), the possession count is now reduced to a class A-II felony.
Each of the three codefendants has entered a plea of guilty to the lesser included offense of criminal sale of a controlled substance in the third degree, a class A-III felony, to cover all pending charges against them, and have been sentenced in the exercise of the discretion authorized by section 60.09 (subd b, par [i]) of the Penal Law to serve indeterminate terms of one to three years.
This defendant rejected opportunities to plead to a lesser offense and elected to stand trial and submit to a jury verdict. He has been convicted of the top count, criminal sale of a controlled substance in the first degree and now awaits sentence for which the statutory minimum is 15 years to life.
This gross disparity between sentences of persons charged with acting in concert with respect to the same offense invites the attention of this court to determine whether the application of constitutional principles, including those relating to cruel and unusual punishment (US Const, 8th Arndt; NY Const, art I, § 5), would justify the imposition of some lesser sentence and the defendant has so moved.
It is well recognized that the term "cruel and unusual punishment” is not capable of precise definition. (Weems v *438 United States, 217 US 349; Furman v Georgia, 408 US 238 [concurring opn Brennan, J.].) It is not static. Rather, it "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society” (Trop v Dulles, 356 US 86, 101).
This principle of constitutional evolution was recognized over a century ago in Weems v United States (supra, at p 373) which so aptly stated: "Time works changes, brings into existence new conditions and purposes. Therefore a principle, to be vital must be capable of wider application than the mischief which gave it birth. This is particularly true of constitutions. They are not ephemeral enactments, designed to meet passing occasions. They are * * * 'designed to approach immortality as nearly as human institutions can approach it.’ The future is their care and provision for events of good and bad tendencies of which no prophecy can be made. In the application of a constitution, therefore, our contemplation cannot be only of what has been but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality. And this has been recognized. The meaning and vitality of the Constitution have developed against narrow and restrictive construction” (emphasis added).
The Court of Appeals in People v Davis (33 NY2d 221, 226) described the proscription against cruel and unusual treatment as being "enacted to preclude the barbarities that had marred the administration of the English criminal law — burnings, brandings, quarterings, disembowelings and the like— [but] the amendment has come to mean much more. Prohibited are not only inhuman methods of punishment, but punishment disproportionate to the offense”. (Emphasis supplied.)
In People v Broadie (37 NY2d 100) the court restated its view that punishment grossly disproportionate to the crime is prohibited. It nevertheless concluded that notwithstanding the apparent severity of the sentence structure with respect to class A felonies involving controlled substances, the statute did not, per se, constitute a violation of applicable constitutional principles. But this ruling was not without reservation.
The court added (p 119) as dicta, the following statement *439 which constitutes the key to the present inquiry. "This is not to say that in some rare case on its particular facts it may not be found that the statutes have been unconstitutionally applied”.
There is therefore no appellate restraint upon an examination on a case-by-case basis of the breadth of the gap between law and justice or the gross disproportionality of sentences to determine whether a sentence imposed in accordance with the applicable statute would be an unconstitutional deprivation of defendant’s Eighth Amendment rights.
Since this individualized review is sanctioned, I do not consider the subsequent decision in People v Jones (39 NY2d 694) as a binding precedent.
In that case a "millhand” in a large-scale heroin packaging and distribution operation was convicted of a class A-I felony and sentenced to an indeterminate term of 15 years to life while 12 others arrested in connection with the same operation and charged with the same crime received lesser sentences upon acceptable pleas to lesser crimes. The defendant Jones elected to protest her innocence rather than enter an available plea.
The court held that the convictions for different crimes justified, if not compelled, an inequality of sentences between appellant and her codefendants and the majority concluded there was no discrimination practiced against her. It cited People v Selikoff (35 NY2d 227, 233) to point out that plea negotiations serve the ends of justice and permit individualized sentences, thus avoiding mandatory harsh sentences.
The minority would have held that "a gross inequality of treatment among like defendants who have committed the identical crime would constitute cruel and unusual punishment.” (People v Jones, supra, p 700.)
The close question in Jones is reflected by the 4-3 split of the court and invites an examination of the reported information as to the offenders and the offense to determine its probable impact upon that decision.
While the defendant had no prior convictions, she did knowingly participate in what is described in the opinion as a "large-scale heroin packaging and distribution operation” involving at least the 12 others referred to above. (People v Jones, supra, p 696; emphasis added.) It cannot be said that she was accidentally or only peripherally involved or that the *440 offense did not have the potential for a major adverse impact upon society in general and the community in particular.
Nor were the sentences as grossly disproportionate as is evident in this case. The principal codefendant in Jones received a sentence of 8 Vs to 25 years and the others were sentenced to terms of five and three years, respectively. Further the defendant’s sentence of 15 years to life had been commuted by the Governor after she served a little more than 39 months and consideration on appeal was limited to the condition that she remain on lifetime parole.
Nor did that opinion indicate in any way that the case-by-case review authorized by Broadie (supra) was amended or overruled.
Since the applicable test was gross disproportionality, the Jones decision is limited to the facts presented and does not preclude this trial court review in another case where cocaine rather than heroin was involved, where the operation was amateurish and limited and where the sentences imposed and yet to be served involve a wider gap in time and significance.
In fact, other courts have continued to treat with each case on its individual merits.
In People v Portanova (56 AD2d 265) the defendant was sentenced after trial to a term of 15 years to life while his codefendant was sentenced, after plea, to four years to life. The Appellate Division, Fourth Department, citing Jones (39 NY2d 694, supra), found no constitutional flaw in the disparity but carefully noted (p 277) that major role played by the defendant as an interstate trafficker in cocaine as opposed to the codefendant’s assignment as "a local pusher acting at defendant’s behest.”
This distinction between both offenders and the offenses involved supported the conclusion of that court.
In People v Alvarez (65 AD2d 146), the defendant was sentenced to a term of six years to life which the court reversed by reason of trial errors. However, 3 of the 4 Justices noted their grave doubt as to the propriety of the sentence of six years to life, the minimum then permitted for the class AII conviction. Because of defendant’s background and the level of her involvement, these Justices stated that except for the reversal mandating a new trial, they would hold that the Broadie exception (37 NY2d 100, supra) was applicable. The *441 fourth Justice did not agree as to the extent of her involvement and would have held otherwise.
In People v Scott (64 AD2d 525), the conviction of the defendant of criminal possession of a controlled substance in the first degree was reversed upon a finding of a lack of sufficient evidence. The dissenting Justice noted, however, that the sentence of 15 years to life required by statute fell within the Broadie exception because it involved constructive possession by a steadily employed, married man with four children. He would hold the punishment so extreme as to violate the constitutional rights of the defendant.
In People v Robinson (68 AD2d 413), Robinson and a co-defendant Simmons were convicted after trial of criminal sale of a controlled substance in the second degree. The Appellate Division, First Department, reduced the minimum sentence applicable to that offense of six years to life to a term of one year to life, the minimum then applicable for a class A-III felony upon a finding that she was a mother of two small children and that her involvement resulted from a relationship with Simmons who had a prior criminal record. The explicit finding was that the statute had been unconstitutionally applied.
It is clear from the cited cases that the phrase "grossly disproportionate” involves relative terms — not absolutes — and that permissible divergence between the mandate of the law and the parameters of justice is to be determined by variables —not fixed points.
The defendant Catalano, now aged 32, faces a sentence with a minimum term of 15 years and a maximum of life which will render him "civilly dead” for an amateurish drug transaction involving $6,400 from which he was to make a few hundred dollars. It would keep him incarcerated until he is 47 years of age, thereby depriving him of the potential of what could be his most fruitful years and deny him the opportunity to marry and raise a family. He will suffer the anguish and frustration of prison for a period of 14 years after his co-defendants have been released to society — free of the burdens of this matter and free to forget the defendant and the mistake they shared. Such punishment is reserved for large-scale drug dealers and repeat offenders (Message of the Governor, dated July 5, 1979, on approving L 1979, ch 410, McKinney’s Session Laws of NY, 1979, p A-379). And yet if *442 measured by the absolutes of aggregate weight, the defendant would not escape this ultimate sentence.
Catalano at the time of his arrest was a musician in a relatively small band earning $250 to $300 per week. Between 1964 and 1967 he served in the United States Navy as a machinist and received an honorable discharge after service in Viet Nam. He comes from a respectable and stable family unit and has had no prior conflict with the law except for a plea to a violation related to his use and possession of marihuana.
He acknowledges that he has sold marihuana, but denies any other drug-related activity except for the events common to the subject indictment and a companion case which were consolidated for the purpose of trial. On this second indictment, he was convicted of and will be sentenced for criminal sale of a controlled substance in the sixth degree involving a sale of a stimulant, phendimetrazine, and criminal sale of a controlled substance in the second degree involving a sale of 5.87 grams of cocaine to the same undercover officer preliminary to the larger scale which triggers exposure to the 15-year sentence. With respect to all of these sales, the defendant claimed he was entrapped but the jury found the defendant guilty and the evidence amply supported their verdict.
The multiple conviction of criminal sale of a controlled substance stemmed from a relationship with a single informant and one set of undercover officers and while separated as to time and differentiated by content and quantity, actually constituted a single venture.
But disparity is not destroyed by these other charges. The codefendant Barry Ambrosio, who aided in the sale, was also accused in another indictment companion to these cases with criminal sale of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. These matters were embraced within his plea to criminal sale of a controlled substance in the third degree and were never tried and yet for reasons which were considered adequate in view of his background and activity, his lesser plea resulted in a sentence of one year to life, reduced without objection from the District Attorney to one to three years (Penal Law, § 60.09, subd b, par [i]).
Nor does the comparison end there. The codefendants *443 Thomas La Calamita and. Lawrence Mercantini, gas station attendants by trade, were the "suppliers”, theoretically the upper level of the drug trade. However, they do not appear to have been engaged in any continuing drug activity and upon their plea have been sentenced to serve one to three years.
The defendant Lawrence Mercantini allowed his home to be used to package the cocaine and as the payoff spot. He was also separately indicted for criminal possession of a controlled substance in the seventh degree, a charge that was dismissed when the evidence was suppressed. The defendant Thomas La Calamita played a more defined role in acquiring the drugs. His sentence of one to three years is in sharp contrast to the penalty Catalano must face because he went to trial.
This was not a commercial venture involving a number of customers. The evidence establishes only the afore-mentioned sequence of sales. While this activity, however limited, cannot be condoned and the participants must be punished by imprisonment, there is no basis for singling Catalano out for the major penalty except as a result of his assertion of innocence by reason of entrapment and the risk he took in electing to stand trial.
He was offered an A-III plea at one time which he did not accept and it was withdrawn. He was later offered a plea to an A-II felony, which now carries a minimum penalty of three years to life, and this too he chose not to accept. The consequence of those elections are now devastating.
The shocking disparity, the gross disproportion between the sentences for persons involved in the same crime leads to the conclusion that a 15-year to life sentence would be unconstitutionally applied. The requirements of the law and the interests of justice in this case are not coextensive. The divergence is too great to be tolerable or acceptable. Yet the defendant cannot enjoy the benefits available on the lowest plea available at any time or to any defendant. The administration and ends of justice do require consideration for those who choose to plead to lesser included offenses.
Accordingly, the defendant will be sentenced within the range permissible for an A-II felony, i.e., a minimum of three years to life and a maximum of eight years to life.
Sentence will be imposed on Thursday, October 25, 1979.