■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT E. HOOKS, Appellant. — Appeal from a judgment of the County Court of Broome County (Coutant, J.), rendered June 25, 1982, upon a verdict convicting defendant of two counts of the crime of manslaughter in the first degree. Following a jury trial, defendant was convicted of two counts of manslaughter in the first degree. Although defendant testified that he was acting in self-defense in stabbing the two victims, there was evidence upon which the jury could have found the following version of the events: at about 9:30 in the evening of September 14, 1981, defendant left his apartment to walk to a nearby Grand Union market. During his return trip from the Grand Union, he was verbally and then physically accosted, without cause or provocation, by five apparently intoxicated men. In the course of their attack, defendant was choked to the point of being rendered momentarily unconscious, after which he was able to escape. The five men proceeded to the Grand Union. At that point defendant went to a nearby diner where he telephoned his brother to request that a gun be brought to him. When his brother refused, defendant went to his own apartment where he armed himself with a 10-inch butcher knife, and, after ascertaining that the men who attacked him had gone to the Grand Union, he ran toward the store. There a second confrontation between defendant and the five men occurred and, during the melee which followed both outside and immediately inside the store, defendant stabbed two of his assailants multiple times, causing their deaths. Defendant left the store and shouted to a passerby that he "got two of them". Then he went to a friend's home, called the police and waited to surrender. He subsequently gave a written statement to the police in which he admitted that his purpose in obtaining the knife and following the men into the Grand Union was to "use the knife on the guy that hit me". The foregoing evidence amply supported the jury's verdict convicting defendant of manslaughter. Indeed, defendant does not seriously argue otherwise. The main thrust of his appeal pertains to the sentence imposed of concurrent terms of imprisonment of not less than two nor more than six years. The record indicates that defendant was a 28-year-old black male from a family of nine children who spent most of his life in the South. He was in Binghamton attending a special remedial course at the State University geared to preparing him for ultimate enrollment in a regular curriculum. He

---

had never engaged previously in any violent or other criminal conduct. He was characterized as passive, gentle, co-operative, posing no threat to society and a person who would be especially vulnerable in a prison environment. Reports before the court further indicated that defendant's victims were violent men with lengthy criminal records. County Court acknowledged the existence of all of the foregoing mitigating factors, expressly stating that "the sentence to be imposed in this case is not done as a matter of discretion but because it is required by the prevailing statutes". Accordingly, the trial court imposed the minimum indeterminate sentence mandated for conviction of two counts of manslaughter in the first degree, namely, concurrent sentences of imprisonment of two to six years (Penal Law, § 70.02, subd 1, par [a]; subd 3, par [a]; subd 4). Defendant's primary argument is that the imposition of the mandated sentence of imprisonment, under the circumstances surrounding the commission of the offense and in view of defendant's character and background, constitutes an unconstitutional application of New York's penal statutes in violation of the cruel and unusual punishment clauses of the United States and New York Constitutions (US Const, 8th Amdt; NY Const, art I, § 5). Certainly, the instant case may be viewed as classic in raising questions as to the wisdom or pragmatic value of mandated prison sentences for criminal offenses. Nevertheless, in our view, principled constitutional decision making and the basic precept that the fixing of penal sanctions is a legislative and not judicial prerogative constrain us from upsetting defendant's sentence. Other than when the death penalty is the sanction imposed, review of sentencing as cruel and unusual punishment is narrowly restricted to only the "exceedingly rare" case (*Hutto v Davis,* 454 US 370; *Rummel v Estelle,* 445 US 263, 272; *People v Broadie,* 37 NY2d 100, 119, cert den 423 US 950). Judicial oversight is limited to objective factors establishing that the punishment (1) is grossly disproportionate to the severity of the crime, by comparison to the sanctions fixed in the same jurisdiction for other serious offenses and those fixed in other jurisdictions for the same or similar offenses, or (2) makes no measurable contribution to acceptable goals of punishment and hence is nothing than the purposeless and needless imposition of pain and suffering (*Coker v Georgia,* 433 US 584, 592; *People v Broadie,* 37 NY2d 100, 112, *supra*). The latter point of inquiry includes analysis of whether the sentence can be considered to further legitimate purposes of criminal justice other than pure retribution (i.e., deterrence, isolation or rehabilitation) and, particularly in capital cases, whether consideration of mitigating factors in the commission of the offense or circumstances of the offender is excluded from the sentencing decision (*Lockett v Ohio,* 438 US 586, 604-605; *Weems v United States,* 217 US 349, 365; *People v Broadie,* 37 NY2d 100, 112, 125-126, *supra*). Measured by any of these standards, defendant is not that very rare case calling for judicial interference with the legislative prerogative. Certainly, it cannot seriously be contended that defendant's sentence of from two to six years is disproportionate to his crimes of causing the death of two persons with an intent to inflict serious physical injury upon them. In this regard, defendant has not demonstrated any disproportionality in comparison with equally serious crimes in New York, or the treatment of manslaughter in other jurisdictions. Nor can it be said that the Legislature was irrational in concluding that for purposes of general deterrence, the class B violent felony category of serious violent or life-endangering offenses (including manslaughter) must carry some minimum prison sentence. The objective of rehabilitation was included in defendant's indeterminate sentence with recommendations to correctional authorities as to actual placement and programs. Finally, it cannot fairly be contended that the various mitigating circumstances were not taken into account by the sentencing court. Defendant received the minimum sentence authorized by law; he could have

received consecutive sentences of 12½ to 25 years (Penal Law, § 70.02, subds 3, 4; § 70.25, subd 2; *People v Walsh,* 44 NY2d 631, 635). On this issue, we discern no inconsistency between the foregoing reasoning and the United States Supreme Court's most recent cruel and unusual punishment decision, *Solem v Helm* (463 US __, 51 USLW 5019). In *Solem,* the court reaffirmed the basic, previously discussed criteria to be applied in such cases and stated that " '[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare' " (*Solem v Helm,* 463 US __, __, 51 USLW 5019, 5023, *supra*). *Solem* involved the constitutionality of applying South Dakota's persistent felony offender statute to impose a sentence of life imprisonment *without parole* for a series of relatively minor, present and past nonviolent property offenses. It is, thus, manifestly distinguishable from the instant case. Defendant's other arguments for reversal merit little discussion. This court's statutory discretion to modify sentences (CPL 470.15, subd 2, par [c]; subd 6, par [b]) does not permit the reduction of a sentence below the minimum allowed by law (*People v Canna,* 35 AD2d 1062, 1063; *People v Molinas,* 21 AD2d 384, 386, cert den 380 US 907). Defendant's argument that the mandated sentence here violates the principle of separation of powers is foreclosed by *People v Eason* (40 NY2d 297). Similarly unavailing is defendant's contention that County Court should have granted his motion to set aside the verdict based upon newly discovered evidence. That motion dealt with evidence of defendant's organically caused reading disability, and its impact on the admissibility of or weight given to his written statement. Defendant clearly failed to make the necessary showing required under CPL 330.30 (subd 3), since information concerning defendant's disability either was available at trial or could have been if counsel had exercised reasonable diligence. We have examined defendant's remaining points and find them equally unpersuasive. For all of the foregoing reasons, the judgment of conviction and sentence should in all respects be affirmed. Judgment affirmed. Main, J. P., Mikoll, Yesawich, Jr., Weiss and Levine, JJ., concur.