■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PRECIOUS BEDELL, Appellant. [621 NYS2d 967] —Order affirmed for reasons stated in decision at Onondaga County Court, Mulroy, J. Balio, Callahan and Doerr, JJ., concur; Wesley, J., concurs in result in the following Memorandum.

Wesley, J. (concurring). I concur in the result reached by the majority but believe it necessary to expand upon the discussion of County Court's ability to set aside defendant's sentence pursuant to CPL 440.20 (1). Defendant did not question the propriety of her sentence on direct appeal *(see, People v Bedell,* 94 AD2d 982, *lv denied* 59 NY2d 971), or in the habeas corpus proceeding in Federal court. Furthermore, defendant seeks relief under CPL 440.20 (1) only.

The dissent acknowledges that the request by defendant for reduction of her sentence is not premised upon a constitutional attack on the sentence as originally imposed. Rather, the dissent asserts that defendant's sentence is invalid as a matter of law "because [defendant's] continued incarceration through the minimum term of 25 years violates the constitutional proscription against cruel and unusual punishment *(see,* US Const 8th Amend; NY Const, art I, § 5)". Although our Court does have the power "to strike down punishments as violative of constitutional limitations, the power must be

exercised with especial restraint" *(People v Broadie,* 37 NY2d 100, 110, *cert denied* 423 US 950). The Court's power to examine the constitutional dimensions of a State-imposed sentencing scheme, however, is limited to weighing the gravity of the offense against the danger the offender poses to society at the time the sentence is imposed *(People v Broadie, supra,* at 112; *see also, People v Escobales,* 146 Misc 2d 573, 575). I know of no authority that permits a mid-sentence constitutional assessment as proposed by defendant and the dissent, nor does the dissent provide us with one.

Our Court does have the statutory authority, as created by the Legislature, to review whether a sentence is harsh or excessive on direct appeal (CPL 470.15 [6] [b]). The dissent correctly notes that appellate courts pursuant to CPL 470.15 (6) (b) have on occasion exercised their discretion to reduce sentences, legally imposed, based upon progress towards rehabilitation through educational achievements *(see, e.g., People v Chen,* 176 AD2d 628; *People v Chambers,* 123 AD2d 270; *People v Hiemel,* 49 AD2d 769) and enrollment in substance abuse treatment or other counselling programs *(see, e.g., People v Andrea FF.,* 185 AD2d 557; *People v Chen, supra; People v Orr,* 138 AD2d 416). All of those cases, however, represent an alteration of the sentence premised on changes in the individual's life post plea, but prior to sentencing *(see, People v Chambers, supra; People v Orr, supra);* during the time between a successful appeal and resentencing *(see, People v Hiemel, supra; People v Andrea FF., supra);* or while a direct appeal was pending *(see, People v Bagley,* 128 AD2d 980; *People v Chen, supra).* The discretion exercised by appellate courts in those cases was delegated to them by the Legislature and does not have a constitutional genesis in the Eighth Amendment of the US Constitution or article I (§ 5) of the NY Constitution.

The Legislature may choose to extend additional discretion in this regard to the courts to resentence defendants based upon their rehabilitative efforts while in State custody *(see,* Fed Rules Crim Pro, rule 35 [b]). However, article IV (§ 4) of the NY Constitution and section 15 of the Executive Law vest authority to commute sentences for all offenses, except treason and cases of impeachment, with the Governor. The Governor's guidelines for clemency require clear and convincing evidence (1) that the applicant has made exceptional strides in self-development and improvement; (2) that the applicant has made responsible use of available rehabilitative programs and identified treatment needs; and (3) that commutation of the

sentence is in the interest of justice consistent with public safety and the rehabilitation of the applicant (Guidelines for Review. of Executive Clemency Applications, reprinted in Mc-Kinney's Cons Laws of NY, Book 18, Executive Law § 15, at 18-19). While the Governor's guidelines closely parallel judicial considerations under CPL 470.15 (6) (b) *(see, People v Andrea FF.,* 185 AD2d, *supra,* at 558-559), the power to grant clemency remains vested by law with the Governor and not with this Court.

Although the record gives only limited details surrounding the death of defendant's daughter in 1980, it is clear that, as the dissent notes, defendant has been a model prisoner while incarcerated. She has changed her life and while doing so, has made significant contributions to other inmates through her writings and her programs in the areas of parenting and foster care. The sad truth remains that, under existing law, defendant has chosen the wrong forum for what may indeed be well-deserved relief.

The dissent concludes that "[r]equiring defendant to remain incarcerated for an additional 10 years amounts to cruel and unusual punishment". However, the relief it suggests, imposing the minimum term of 15 years, does not necessarily resolve the constitutional issue as defined by the dissent. There is no guarantee that defendant will be paroled once she has served the minimum term and applies for parole in July 1995. There is no inherent constitutional right to parole *(Matter of Russo v New York State Bd. of Parole,* 50 NY2d 69, 73). Determinations by the Parole Board are not subject to judicial review if done in accordance with State law (Executive Law § 259-i [5]; *see also, Matter of Gonzalez v Rodriguez,* 135 AD2d 633; *Matter of Davis v New York State Div. of Parole,* 114 AD2d 412).

Until the Legislature gives us authority to review a sentence based on the laudable efforts by a defendant during her term of imprisonment to change her life, such that the interest of justice requires a reduction in the minimum imposed, we are prohibited from doing so. I see no basis in the Eighth Amendment of the US Constitution or in article I (§ 5) of the NY Constitution that allows otherwise. The order appealed from must be affirmed.

Green, J. P., dissents and votes to reverse in the following Memorandum.

Green, J. P. (dissenting). I dissent. Fourteen years ago, defendant was convicted of murder in the second degree

(Penal Law § 125.25 [2]) for killing her infant daughter, La-Shonda. The trial court imposed the maximum sentence of 25 years to life. This Court affirmed her conviction (see, People v Bedell, 94 AD2d 982), and the Court of Appeals denied leave to appeal (59 NY2d 971).

Defendant moved, pursuant to CPL 440.20 (1), to set aside her sentence on the ground that it is unconstitutionally harsh. Defendant sought imposition of the minimum term permitted by law upon her murder conviction, 15 years to life imprisonment (see, Penal Law § 70.00 [3] [a] [i]). A hearing was held before County Court. At that hearing, defendant presented compelling evidence of her rehabilitation and of her extraordinary achievements in prison. The hearing ended with the impassioned remarks of the District Attorney of Onondaga County, who had joined defendant's motion seeking a reduction in sentence. The District Attorney expressed the People's view that "justice would be served by this woman being resentenced" and beseeched the court to grant defendant's motion.

The court denied the motion solely on the ground that it lacked authority to grant the requested relief pursuant to CPL 440.20. That was error. CPL 440.20 (1) provides: "At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law."

Defendant urges that her sentence is "invalid as a matter of law" because her continued incarceration through the minimum term of 25 years violates the constitutional proscription against cruel and unusual punishment (see, US Const 8th Amend; NY Const, art I, § 5). CPL 440.20 (1) permits defendant to raise such a challenge to her sentence "[a]t any time after the entry of a judgment" and grants the sentencing court discretion to sustain that challenge. The court's discretion is in no way constrained by the fact that defendant has commenced serving her sentence (see, People v Turner, 47 AD2d 564). Further, nothing in the language of the statute limits the court to correcting errors arising at the time the original judgment was entered. Indeed, at least two courts have entertained post-judgment motions alleging that particular sentences, although authorized and legal at the time they were imposed, have been rendered unconstitutionally cruel by subsequent events (see, People v Escobales, 146 Misc 2d 573; People v Dowd, 140 Misc 2d 436). In concluding that it lacked discretion to grant the motion, the court erred as a matter of

law *(see, People v Aphaylath,* 68 NY2d 945; *People v Williams,* 56 NY2d 236, 240-241).

Given the overriding purposes of punishment *(see, People v Oliver,* 1 NY2d 152, 160), a court determining whether a sentence is excessive should, when appropriate, consider circumstances arising after the sentence is imposed *(see, e.g., People v Andrea FF.,* 185 AD2d 557; *People v Chen,* 176 AD2d 628; *People v Orr,* 138 AD2d 416; *People v Bagley,* 128 AD2d 980; *People v Chambers,* 123 AD2d 270; *People v Hiemel,* 49 AD2d 769). A reduction in sentence is clearly justified when a defendant demonstrates progress toward rehabilitation through educational attainments *(see, People v Chen, supra; People v Chambers, supra; People v Hiemel, supra),* enrollment in substance abuse treatment or other counselling programs *(see, People v Andrea FF., supra; People v Chen, supra; People v Orr, supra),* or otherwise establishes "potential for becoming a responsible contributing member of society" *(People v Orr, supra,* at 418).

At the time she entered Bedford Hills Correctional Facility in 1980, defendant had not completed her high school education. During her confinement, defendant earned her GED, an associate of science degree, and received a bachelor's degree, with honors, from Mercy College. Much of her time in prison has been devoted to working with young children and their mothers at Bedford Hills. She has served as chairperson of the Children's Center and the Inmate Foster Care Committee at that facility. With the assistance of a law professor at Columbia University, defendant authored The Foster Care Handbook for Incarcerated Parents. The programs defendant developed at the Children's Center have become models for mother-child programs in the prison system nationwide. Defendant's accomplishments also include the development of a close relationship with defendant's own two children.

Defendant's record of exceptional achievements and exemplary character is reflected in the unanimous view that the interest of justice will be best served by a reduction of defendant's sentence. Several members of the Bedford Hills staff—guards, social workers and administrators—testified or wrote letters on defendant's behalf. Other professionals who had worked with defendant expressed their staunch beliefs that she was rehabilitated and would contribute significantly to the community. The Superintendent of the facility, who had never before expressed a view on an inmate's sentence, wrote a letter to the court attesting to defendant's rehabilitation and

detailing defendant's "tireless work to improve the lot of incarcerated mothers."

Because the court concluded that it lacked authority to grant the relief requested, it did not consider the merits of the contention that defendant's minimum sentence of 25 years violates the constitutional proscription against cruel and unusual punishment *(see, People v Cronin,* 60 NY2d 430, 433). At the outset, it should be noted that this is not a typical challenge to a sentencing statute. Defendant does not contend that the applicable sentencing provision permitting a minimum term of between 15 and 25 years is unconstitutional, either on its face or as applied to her *(cf., People v Thompson,* 83 NY2d 477; *People v Jones,* 39 NY2d 694; *People v Broadie,* 37 NY2d 100, *cert denied* 423 US 950; *People v Hooks,* 96 AD2d 1001; *People v Robinson,* 68 AD2d 413; *People v Alvarez,* 65 AD2d 146; *People v Catalano,* 101 Misc 2d 436). Defendant does not challenge the sentencing statute; rather, she asks to be sentenced in accordance with that statute.

Justice requires that defendant's request be granted. This defendant has demonstrated far more than a potential for contributing to society. She has already made significant contributions in the areas of parenting and foster care. Her work with incarcerated mothers and their children has earned universal admiration, respect and acclaim from her fellow inmates, the staff and Superintendent of Bedford Hills, and numerous professionals in the fields of social work and law. The District Attorney of Onondaga County captured the remarkable nature of defendant's achievements at the hearing: "This is not a routine case where the woman has done the ordinary or even the extraordinary. This is. * * * far, far beyond that."

The inescapable conclusion from the facts presented at the hearing is that the community has much to gain and nothing to lose if defendant is considered for parole after 15 years rather than 25 years. Requiring defendant to remain incarcerated for an additional 10 years amounts to cruel and unusual punishment. A sentence may be unconstitutionally harsh, not only when it is barbaric or torturous, or when it is grossly disproportionate to the crime *(see, Weems v United States,* 217 US 349, 373; *People v Broadie,* 37 NY2d 100, 111, *supra),* but also when it "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering *(Coker v Georgia,* 433 US 584, 592; *People v Broadie,* 37 NY2d 100, 112, *supra)" (People v Hooks,* 96 AD2d 1001, 1002, *supra).*

In other words, "[t]he infliction of punishment, particularly where its severity serves no valid penological purpose is cruel and inhuman" *(People v Askew,* 93 Misc 2d 754, 764; *accord, People v Insignares,* 121 Misc 2d 921, 929).

The majority, in effect, tells this defendant that, although her sentence serves no legitimate purpose and justice cries out for her release, the court's hands are tied. I do not believe that the Criminal Procedure Law requires that result. In my view, defendant is entitled to have her sentence vacated because it is "invalid as a matter of law" (CPL 440.20 [1]) and defendant should not be forced to rely on the mercy of the Governor. Even if the majority has correctly interpreted the CPL, however, I would point to the words of former Chief Judge Breitel in his dissenting opinion in *People v Jones* (39 NY2d 694, 701, *supra):* "While justice and law may not be coextensive, and indeed they are not, a divergence too great is not tolerable or acceptable under constitutional limitations based on due process of law, equal protection of the law, and cruel and unusual punishment. Margin for discrepancy there may be between law and justice but not an ocean's breadth justified only by adherence to the letter." Another Judge has observed that a court has " 'power in appropriate but rare circumstances to allow the letter of the law gracefully and charitably to succumb to the spirit of justice' " *(People v Davis,* 55 Misc 2d 656, 659, quoted in *People v Insignares,* 121 Misc 2d 921, 925, *supra).* This is one of those rare circumstances.

As Judges, we cannot ignore the fact that the prison population in this country now exceeds one million, which includes over 60,000 inmates in our State prisons. The taxpayers, moreover, will spend between a quarter and a half million dollars over the next 10 years to keep this defendant in her prison cell for no reason that anyone can identify. Justice, equity and common sense require a different result.

Finally, we should also not overlook the efforts of the District Attorney of Onondaga County in seeking a just result for this defendant. He is to be commended for those efforts.

Because the court denied the motion based solely upon its erroneous conclusion that it lacked discretion to grant the motion, the order should be reversed and the matter remitted to County Court for reconsideration of defendant's motion *(see, People v Cronin, supra; People v Becraft,* 198 AD2d 868, 869). (Appeal from Order of Onondaga County Court, Mulroy, J.— CPL art 440.) Present—Green, J. P., Balio, Wesley, Callahan and Doerr, JJ. (Filed Dec. 12, 1994.)