THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GASSILMER MADISON, Defendant-Appellant.

Second District    No. 78-525

Opinion filed February 27, 1980.

Mary Robinson and Richard Cunningham, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Gassilmer Madison was convicted of rape and aggravated kidnapping after a jury trial, and sentenced to concurrent terms of 10 years on the rape charge and 5 years on the charge of aggravated kidnapping. In this appeal, defendant contends that he was deprived of the effective assistance of appointed counsel, who represented him as well as a co-defendant, alleging a conflict of interest. He also contends that he was given a disparate sentence because he refused to admit his guilt.

On November 22, 1977, an information was filed charging Madison and a co-defendant, Lee Dismuke, with rape and aggravated kidnapping, alleged to have occurred in May of 1976. The co-defendants were arrested after Dismuke in November 1977 walked into the police department and confessed, implicating the defendant. , Assistant public defender Richard Berry was appointed to represent both Madison and Dismuke. On his motion and after a fitness hearing Dismuke was found unfit to stand trial on January 18, 1978.

On February 10, 1978, Berry presented an oral motion to dismiss the charges against Madison, arguing that Dismuke was a crucial witness in Madison's case but that Madison was deprived of his right to confront Dismuke because Dismuke's mental condition made him unfit to testify. The judge hearing the motion found that Dismuke's unfitness for trial did not conclusively demonstrate that he was incompetent to be called as a witness in Madison's case and denied the motion.

Subsequently, defendant's motions to suppress identification and statements were heard jointly and denied. During this hearing, police officers testified that Lee Dismuke gave a statement on November 8, 1977, implicating the defendant, and that when the defendant saw Mr. Dismuke at the lineup, he stated: "I don't want you to do any more lying on me"; and that Dismuke replied, "They know everything already; it does not matter." After the jury was picked, the prosecutor made a motion *in limine* to prevent the defense referring to Dismuke and the status of his case. The prosecutor informed the trial judge of Dismuke's confession and his subsequent incompetency, whereupon defense counsel stated that he might wish to call Dismuke as a court's witness and cross-examine him concerning his accusations against Madison but that to do so would place him in a conflict of interest position. The court then ordered that no reference be made during trial to Dismuke's status as to the charges pending against him but indicated that it would be permissible to call Dismuke as a witness and that the court would consider at that time appointing separate counsel to represent Dismuke to avoid the conflict of interest question.

At trial the victim testified that on May 29, 1976, she was approached by a man with a gun who ordered her into an old blue Chevrolet as she returned home at approximately 9:30 or 10 o'clock in the evening. There was another man sitting on the passenger side of the front seat of the car, who also displayed a gun. She said that when they began to drive around the area the man on the passenger side placed his gun in the glove compartment. The driver, however, kept his gun with him at all times. After driving around for about a half an hour they parked in a field. The driver of the car, then the passenger, had intercourse with the victim. She reported the matter to the police. It was approximately a year and a half

later, after Dismuke spoke to the police, when the victim was shown five photographs and identified the photograph of defendant Madison as being one of the men involved. She later viewed a lineup containing both Madison and Dismuke. At first, she told the police she could not positively identify anyone in the lineup. Asked again, she said that if she had to pick, she would pick "number 2" and "number 4." Number 2 in the lineup was Dismuke, and number 4 was the defendant, Madison. At the preliminary hearing two weeks later, she again identified both men.

The defendant presented an alibi defense. He testified that on the night in question he had attended a concert, and that following the concert he had gone to a bar and a party with friends. His alibi was corroborated by certain of these friends.

At the sentencing hearing the court considered a presentence report, but no other evidence was presented in mitigation or aggravation. The sentences were then imposed.

Thereafter, Dismuke was found fit to stand trial. He appeared before a judge, other than the trial judge in this case, who accepted a plea agreement to the charge of rape under which he would receive a six-year sentence, with the aggravated kidnapping charge to be dismissed.

■■ In connection with the conflict of interest issue, the State claims waiver. Defendant's post-trial motion makes no mention of the conflict of interest issue and, generally, that would preclude our review of the issue unless the error falls within the plain error rule. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282.) However, the issue was raised in the defendant's pretrial motion to dismiss and the denial of this motion was cited as error in defendant's post-trial motion. The State argues that the basis of the pretrial motion was not the alleged conflict but whether defendant could be properly tried without the right to confront Dismuke, then an incompetent. However, it appears from the record that the conflict issue was clearly brought to the court's attention in the colloquy surrounding the prosecution's motion *in limine* to limit reference to Dismuke during the trial.

In a case in which possible conflicting positions of two defendants were never called to the trial court's attention, there was no request for separate counsel, and no reference was made to the denial of effective assistance of counsel on the written motion for a new trial, the Illinois Supreme Court held that the conflict question was thereupon waived and could not be raised on review except as plain error. (*People v. Precup* (1978), 73 Ill. 2d 7, 16.) But *Precup* is distinguishable since the issue was here clearly brought to the court's attention in the colloquy surrounding the prosecution's motion *in limine,* and we therefore conclude that the issue has not been waived. (See also *Holloway v. Arkansas* (1978), 435

U.S. 475, 484-85, 55 L. Ed. 2d 426, 434-35, 98 S. Ct. 1173, 1179.) We will therefore review the merits of the issue.

■■ Although joint representation is not necessarily a *per se* violation of constitutional rights, it is clear that requiring an attorney to represent two co-defendants whose interests are in conflict is a denial of the sixth amendment right to effective assistance of counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 481, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1177; *People v. Vriner* (1978), 74 Ill. 2d 329, 339-40.) To prevail on a joint representation claim, a defendant must show "an actual conflict of interest manifested at trial." (*People v. Berland* (1978), 74 Ill. 2d 286, 299-300. See also *People v. Ballard* (1978), 65 Ill. App. 3d 831, 839-40.) The circumstances in *Ballard* contain many similarities to this case. In both cases the possible conflict-of-interest problem was brought up immediately before trial; the nature of the conflict was vague and speculative; the trial court indicated that if the conflict should actually arise it should be again brought to the attention of the court; and no actual conflict arose. Mr. Berry refused to specify that Dismuke would be called as a witness and, in fact, he was not called. Whether an actual conflict would arise at trial was therefore speculation. Considering the circumstances it seems inconceivable that Dismuke would be called as a witness by any defense counsel for Madison in view of his implication of Madison in the crime. At any rate, there was no showing of what would be gained by calling Dismuke. The trial court therefore did not fail "to take adequate steps in response" to the representations made to it, particularly in view of the lateness of the defense counsel's informing the trial court of a possible conflict. Compare *Holloway v. Arkansas* (1978), 435 U.S. 475, 487, 55 L. Ed. 2d 426, 436, 98 S. Ct. 1173, 1180.

■■ ■ Defendant argues in the alternative that an actual conflict developed in the sentencing stage which deprived Madison of his right to effective counsel. He argues that the conflict arose because his alibi defense conflicted with the confession of Dismuke, or in the alternative because counsel failed to bring out the suspicious aspect of Mr. Madison's arrest more than a year after the alleged crime and failed to argue in sentencing that he was less culpable. However, none of these claimed conflicts amount to actual conflicts manifested at trial. (*People v. Vriner* (1978), 74 Ill. 2d 329, 341; *People v. Berland* (1978), 74 Ill. 2d 286, 301.) The admission of guilt by a co-defendant and his later determination to plead guilty do not of themselves show that the co-defendants have antagonistic positions, where the co-defendant does not testify. *People v. Barren* (1975), 32 Ill. App. 3d 78, 82.

Defendant further argues that his sentence is unjustly disparate and should be reduced. He contends that there is no proper justification for

sentencing him to the concurrent terms of 10 years for rape and 5 years for aggravated kidnapping when the co-defendant was allowed to plead guilty to rape alone and receive a 6 year sentence. He argues that he was sentenced more heavily because of his refusal to admit guilt even though he was less culpable.

It appears that the backgrounds of the defendants were almost identical. However, we must reject defendant's claim that Dismuke was the instigator of the offense and was more active throughout. Although the testimony of the complaining witness was that Dismuke approached her on the street and forced her at gunpoint into the car, it also appeared that defendant had a gun which he displayed to the witness. The circumstances show that both parties were active and willing participants in the crime.

■■ Defendant's argument that the trial court increased his sentence because he refused to admit his guilt is not well taken. At the sentencing hearing defendant's attorney argued that his continued profession of innocence should be considered a factor in mitigation. In response, the court agreed that defendant should not be penalized for professing innocence and had every right to assert his innocence at trial. But the court also noted that when the defendant testified at trial and the jury did not find his alibi credible the defendant's inability to face the evidence clearly supporting the verdict showed a lack of remorse which the court could consider in sentencing. Under the circumstances we do not find the substantial disparity in the sentences which would justify reduction under provisions of Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(4)). In our view the trial judge properly considered the rehabilitation potential of the defendant as well as other proper factors in reaching his sentence and we find no abuse of discretion. See *People v. Galati* (1979), 75 Ill. App. 3d 860, 864-65.

The judgment of the trial court is therefore affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.