304 S.E.2d 851

**STATE of West Virginia**

v.

**William Francis COOPER.**

**No. 15574.**

Supreme Court of Appeals of West Virginia.

June 22, 1983.

---

Harry C. Taylor, II, McKittrick & Vaughan, St. Albans, for appellant.

Janet F. Steele, Asst. Atty. Gen., Charleston, for appellee.

HARSHBARGER, Justice:

A Kanawha County Circuit Court jury convicted William Francis Cooper of robbery by violence, W.Va.Code, 61-2-12,[1] and he was sentenced to the West Virginia Penitentiary for forty-five years. He challenges the length of his sentence as violating the principle of proportionality in West Virginia Constitution Article III, Section 5: "Penalties shall be proportioned to the character and degree of the offence," and lists several trial deficiencies, including admission of his confession, insufficient evidence to convict, ineffective assistance of counsel, instructions, and prejudicial judicial conduct.

In the early morning hours of August 31, 1980, Robert Puhan was beaten and robbed of his wallet, thirty-five dollars, and several credit cards. His memory was hazy because he had been knocked unconscious, but he recalled being struck as he walked along Quarrier Street in Charleston's East End, being rolled over on the ground, and having his wallet removed by several people (at least two or three), who he could not identify. He needed stitches for his injuries, but has fully recovered.

On September 5, two men tried to use Puhan's credit cards to get cash at the National Bank of Commerce. A combination of suspicious circumstances led bank personnel to check the cards. They determined they had been reported stolen, and notified an off-duty policeman who happened to be in the bank. A chase ensued, and the young men separated, but were finally arrested in downtown Charleston.

Cooper and his co-defendant, Spradley, were taken to police headquarters. Before Cooper was taken to a magistrate, he was informed that Spradley had made a statement against him about the robbery, whereupon Cooper gave his version:

> Joe and I were walking towards the east end, I don't know the street, and I just walked up in front of a guy and asked him could I borrow a quarter from him, I believe he was drunk or something. He turned around real fast, and threw a punch at me, and I jumped back, and told him, what did he throw it for, and he took his glasses off, and that's when I punched him. Then he just fell down, and JJ hit him a couple times in the stomach, and I hit him a couple of times in the stomach, then we both reached for the billfold at the same time. He reached for it first. I held him, while he took the billfold out of his pocket. Then we got up and ran to the riverbank near the State Capitol.

Spradley and Cooper were indicted and Cooper pled not guilty, had a jury trial at which neither he nor Spradley testified, and was convicted. The next week Spradley pled guilty to petit larceny and was sentenced to one year in the county jail.

## ALLEGED TRIAL ERRORS

Should Cooper's confession be inadmissible because considering all the circumstances surrounding its elicitation, it was involuntary? There is no question that Cooper was properly advised of his rights and signed a waiver. He argues that his youth, his low intelligence, and officers'

---

1. W.Va.Code, 61-2-12, in part:
   "If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery in any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five nor more than eighteen years."

comments that Spradley implicated him in the robbery, worked together to invalidate his confession. *State v. Adkins,* 170 W.Va. 46, 289 S.E.2d 720 (1982); *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982).

Cooper was nineteen with an eleventh-grade education, but there is no concrete evidence that he was of subnormal intelligence, although he told police he had trouble reading. A truthful statement by the police that a co-defendant confessed, implicating a defendant, does not make a subsequent confession by him inadmissible.

A confession of the accused is admissible in evidence where it appears that it was made to the prosecuting attorney and sheriff without any inducement of a worldly or temporal character in the nature of a threat, promise or benefit held out to him by them in respect to his escape from, or mitigation of, his punishment. Information from them to him that a confederate in the crime had confessed and placed the guilt on the accused, unaccompanied by any threat, inducement or promise of benefit by which he could escape from, or receive diminution of, punishment from the consequences of the crime will not render the confession inadmissible. Syllabus, *State v. Goldizen,* 93 W.Va. 328, 116 S.E. 687 (1923).

*Accord, State v. Sparks,* 171 W.Va. 320, 298 S.E.2d 857, 864 (1982); *see generally,* Annot., Admissibility of confession as affected by its inducement through artifice, deception, trickery, or fraud, 99 A.L.R.2d 772 (1965 and 1983 Later Case Service). There is no evidence of trickery, coercion or duress. The State proved by a preponderance of evidence the voluntariness of Cooper's confession, and it was properly admitted. *State v. Goodmon,* 170 W.Va. 123, 290 S.E.2d 260 (1981).

Defendant's challenge to the sufficiency of the evidence also fails. After applying our test from Syllabus Point 1 in *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), we do not find the evidence manifestly inadequate:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Cooper enumerated multiple failures on the part of his trial counsel that made his representation ineffective. He complains that his counsel filed very few pre-trial motions to test the sufficiency of the charge and indictment, failed to conduct an investigation to develop the possibility of a defense and therefore called no witnesses, did not object to many matters at trial including the State's use of evidence of Cooper's fraudulent use of the credit cards and admission of hearsay and conclusory comments by witnesses, failed to thoroughly cross-examine witnesses, did not object to the manner in which the State handled documentary evidence, failed to have an expert examine Cooper's mental abilities, and did not move for reconsideration of his sentence. He also claims his lawyer should have made an opening statement and should have advised him to testify in his own defense.

Most of these alleged ineffective acts are not cited to any facts in the record. We cannot find any indication that there was no investigation. The record reveals in an *in camera* conference that Cooper told the court and his attorney that he had no witnesses to call and the court emphasized to him that it was his decision whether or not to testify. Cooper does not state what pre-trial motions should have been filed or why.

The evidence of Cooper's attempt to fraudulently use the credit cards was to identify Cooper as the perpetrator of the robbery, and corroborate his confession. It showed how the cards were discovered in his possession. It was not presented as evidence of another crime, and while de-

fense counsel may have been successful in attempting to limit some of the testimony, we cannot say his failure to do so was ineffective. Evidence that Cooper possessed the fruits of the crime, the credit cards, is always admissible. 29 Am.Jur.2d *Evidence* § 289.

Cooper gave us nothing to indicate that he was so mentally deficient that failure to have him examined by an expert was ineffective assistance.

Cooper's counsel did not move for reconsideration of sentence, but did indicate that Cooper would appeal. Because we have decided the sentence matter herein, this was not ineffective.

Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused. Syllabus Point 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

We said in *State v. Key,* 166 W.Va. 505, 275 S.E.2d 924, 927 (1981):

To the extent that defense counsel failed to make certain motions on behalf of the defendant which would normally have been made by an attorney who was reasonably knowledgeable of criminal law, we conclude that his omissions were not prejudicial, would not have in any way influenced the outcome of the case, and must be regarded as harmless error. Syl. pt. 19, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

■ Finally, we could find no prejudicial comments made by the trial court in front of the jury, nor any reversible instructional error,[2] and Cooper's guilty verdict should stand.

---

**2.** All instructions were only objected to generally. We stated in *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539, 547 (1979), that objections must be distinct and specific about their grounds or they are not reviewable. *See* Syllabus Point 6,

## SENTENCE

Robbery by violence is punished by a minimum determinate ten-year sentence, but a trial court has broad discretion to impose any determinate sentence from ten years to life. W.Va.Code, 61–2–12, fn. *supra. State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 267 S.E.2d 736 (1980). In *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375, 379 (1980), we set out guidelines for the factual record needed to support imposition of a robbery sentence:

The sentencing record should include the presentence report and any other diagnostic reports used as an aid in imposing the sentence. The court shall also permit statements relevant to the sentence to be made on the record by the defendant, his attorney, and the prosecuting attorney, if the statements have not already been recorded at or prior to the time sentence was initially imposed.... Finally, the sentencing judge shall state on the record his reasons for selecting the particular sentence....

We have remanded several cases for resentencing after development of a factual record to justify lengthy sentences. *E.g., State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982); *State v. Winston,* 170 W.Va. 555, 295 S.E.2d 46 (1982); *Smoot v. McKenzie,* 166 W.Va. 790, 277 S.E.2d 624 (1981).

The trial court has given us a record that includes his reasons for sentencing Cooper to forty-five years. *See* Appendix.

The pre-sentence report on which the judge relied was not made part of the trial court record, but is before us, as is Spradley's, as an appendix to the State's brief. They include statements by the defendants, victim, arresting officers, family, prior criminal records, family information, educational and social histories, and for Cooper an evaluation and recommendation by the probation officer that he receive a minimum sentence without probation.

---

*State v. Angel,* 154 W.Va. 615, 177 S.E.2d 562 (1970). *See also* W.Va.Rules of Criminal Procedure, Rule 30. There was no plain error that we notice.

The gist of this information is that Cooper was nineteen at the time of the offense, no weapon was used, the victim was not seriously or permanently injured, Cooper's only prior arrest was for public intoxication, he did not graduate from high school, he lived on the streets and clearly needs guidance and structure in his life. We do not understand how the judge discerned from this report that Cooper associated with hardened criminals, that he has made a way of life of crime, or that he has a heart fatally bent on mischief. That information is not in his presentence report, and there was no testimony to that effect.[3] We are aware that Cooper lied to officers when he was arrested—he told them he was a juvenile—but that does not make him a hardened criminal.

■ A trial judge's discretion, while very broad in sentencing for robbery, must be tempered by W.Va.Const. art. III, § 5, *supra,* requiring sentences to be proportional to the character and degree of the offense.[4] Syllabus Point 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980). We ordinarily decline to intervene with judicially imposed sentences within legislatively prescribed limits. *State v. Newman,* 108

W.Va. 642, 152 S.E. 195, 197 (1930). So do most courts. *See* Annot., Length of Sentence as Violation of Constitutional Provisions Prohibiting Cruel and Unusual Punishment, 33 A.L.R.3d 335. We continue to adhere to that rule. Nonetheless, in a case such as this, when our sensibilities are affronted and proportional principles ignored, there is an abuse of discretion that must be corrected.

A criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. Syllabus Point 7, *State v. Vance, supra.*

■ We recognized in *Smoot v. McKenzie, supra,* that disparate sentences of co-defendants that are similarly situated may be considered in evaluating whether a sentence is so grossly disproportionate to an offense that it violates our constitution. Disparate sentences for co-defendants are not per se unconstitutional. Courts consider many factors such as co-defendants' respective involvement in the criminal transaction (including who was the prime mover),[5] prior records,[6] rehabilitative potential

---

**3.** Cooper testified at his suppression hearing:

"This is my first offense, and this is going to be my last offense, because when I get out, there won't be nothing like that anymore. That's a promise. Just like I say, this is my first time ever in the county jail, in 19 years, and I say this is going to be my last one, too."

**4.** The proportionality principle is also found in the Eighth Amendment to our federal constitution, *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), what little of it remains after *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), *reh. denied,* 455 U.S. 1038, 102 S.Ct. 1742, 72 L.Ed.2d 156, and *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). The United States Supreme Court has emasculated the concept of proportionality in its per curiam opinion in *Hutto v. Davis.* We are moved by Justice Brennan's dissent, 454 U.S., at 381, 102 S.Ct., at 709, 70 L.Ed.2d, at 565, with whom Justices Marshall and Stevens joined. We praise our West Virginia citizenry for protecting themselves from such injustice by specifying a proportionality requirement in our state constitution. That constitutional mandate permits our deliberate decision on gross dispro-

portionality to stand, rather than suffer harsh rebuke as our Fourth Circuit Court of Appeals endured in *Hutto v. Davis.*

**5.** *United States v. Mann,* 615 F.2d 668 (5th Cir. 1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193; *United States v. Haro-Espinosa,* 619 F.2d 789 (9th Cir.1979); *LaCoste v. Blackburn,* 592 F.2d 1321 (5th Cir.1979), *cert. denied,* 444 U.S. 968, 100 S.Ct. 458, 62 L.Ed.2d 381; *United States v. Harlin,* 539 F.2d 679 (9th Cir. 1976), *cert. denied,* 429 U.S. 942, 97 S.Ct. 362, 50 L.Ed.2d 313; *People v. Dehnel,* 99 Cal.App.3d 404, 160 Cal.Rptr. 279, 282 (1979); *Justus v. State,* 247 Ga. 276, 276 S.E.2d 242 (1981), *cert. denied,* 454 U.S. 882, 102 S.Ct. 366, 70 L.Ed.2d 193; *People v. Parish,* 38 Ill.Dec. 494, 82 Ill. App.3d 1028, 403 N.E.2d 725, 729 (1980); *People v. Johnson,* 71 Ill.App.3d 143, 27 Ill.Dec. 271, 388 N.E.2d 1320, 1325 (1979); *State v. Fraser,* 120 N.H. 117, 411 A.2d 1125, 1129 (1980); *Woodruff v. State,* Okl.Cr.App., 582 P.2d 1330 (1978); *McGowen v. State,* 221 Tenn. 442, 427 S.W.2d 555, 560 (1968).

**6.** *Wright v. State,* Ala.Cr.App., 380 So.2d 398 (1980); *State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976); *Demps v. State,* Fla., 395 So.2d 501 (1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 430,

(including post-arrest conduct, age and maturity),[7] and lack of remorse.[8] If defendants are similarly situated, some courts will reverse on disparity of sentence alone. *E.g., People v. Godinez,* 47 Ill.Dec. 311, 92 Ill.App.3d 523, 415 N.E.2d 36 (1980); *People v. Catalano,* 101 Misc.2d 436, 421 N.Y. S.2d 310 (1979).

Although we sustained a twenty-five-year term of imprisonment in *State v. Newman,* 108 W.Va. 642, 152 S.E. 195, 197 (1930), we stated:

> It would not be clear to the mind of the layman what impelled the difference in punishment of two persons each equally guilty. While the sentence of Kirtley for larceny has no bearing on the severity of the punishment given Newman, the fact that Kirtley escaped the charge of robbery, of which he was clearly guilty, beclouds the justice of the severe punishment upon his companion in that crime. The primary object of punishment is retributory justice, and unless such justice be shown in the sentence of the court it is not likely to deter others from committing crime nor to reform the person sentenced. An excessive punishment, instead of being a deterrent, often results in the generation of an angry public contempt of justice because of its severity, and does not reform the criminal who perceives injustice towards himself. The best course for the courts is to adapt the duration of the punishment to the prisoner's guilt, keeping in view his character and susceptibility to reformation as an ingredient. 1 Kerr's Whart. Crim.Laws, §§ 12, 22. These general observations are here made because some of our courts too often impose such severe and excessive punishments as are calculated to bring the administration of justice into public disfavor.

■ However, we need not decide this case on disparity principles because this sentence shocks our sense of justice and is on its face grossly disproportionate to Cooper's crime, age, and prior record.

■ There are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution. *Accord, Stockton v. Leeke,* 269 S.C. 459, 237 S.E.2d 896, 897 (1977). The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Cooper's sentence is so offensive to a system of justice in which proportionality is constitutionally required that we need not even reach the objective *Wanstreet* test.

We share with you some insightful decisions by other state courts invalidating excessive sentences as totally disproportionate to the crime committed. In *State v. Kimbrough,* 212 S.C. 348, 46 S.E.2d 273 (1948), the South Carolina Supreme Court invalidated a thirty-year sentence for burglary, although this sentence was within legislatively prescribed limits. The court

70 L.Ed.2d 239; *People v. Bell,* 95 Ill.App.3d 803, 51 Ill.Dec. 83, 420 N.E.2d 497 (1981); *State v. May,* La., 339 So.2d 764 (1976); *State v. McCaine,* Mo., 460 S.W.2d 618, 621 (1970); *Commonwealth v. McQuaid,* 273 Pa.Super. 600, 417 A.2d 1210, 1216 (1980).

7. *People v. Walker,* 44 Ill.App.3d 494, 3 Ill.Dec. 274, 358 N.E.2d 672 (1976); *People v. Henne,* 10

Ill.App.3d 179, 293 N.E.2d 172 (1973); *Commonwealth v. Thurmond,* 268 Pa.Super. 283, 407 A.2d 1357 (1979).

8. *United States v. Mann,* 615 F.2d 668, 672 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193; *People v. Madison,* 36 Ill.Dec. 730, 81 Ill.App.3d 471, 401 N.E.2d 571, 575 (1980).

emphasized the defendant's lack of a record of misbehavior and the jury's recommendation of mercy: [9]

> Everyone concedes that burglary is one of the worst of crimes and the offender should be severely punished, but still it, like every other crime, has its grades of aggravation and enormity. In the instant case, it is conceded that the sentence was based entirely upon the facts heretofore reviewed which show no particular circumstances of aggravation. It is reasonable to infer from this testimony that appellant did not have in his possession any burglar tools or a weapon of any kind. It was stated in oral argument that the report made to the officers by the Federal Bureau of Investigation did not disclose that appellant had any past criminal record. From the evidence the jury evidently concluded that appellant should not receive the maximum punishment of life imprisonment, but the sentence imposed is to all intents and purposes the equivalent of a life sentence, which is the highest punishment permitted for the most aggravated form of the crime. There is nothing here which would justify the Court in disregarding the recommendation made by the jury. No one doubts that the able trial judge conscientiously endeavored to fix a sentence which he thought was fair and just, but under all the circumstances we are constrained to hold that the sentence imposed is manifestly too severe.

> It is perhaps unnecessary to add that only under rare and unusual circumstances will this Court interfere with the discretion of the trial judge in the imposition of a sentence. The difficult duty and the weighty responsibility of determining the sentence to be imposed on a defendant is under most of our statutes properly left, within certain limitations, to the trial judge, who is in a much better position than this Court to fix the penalty to be imposed. As well stated in *Hawkins v. United States*, 7 Cir., 14 F.2d 596, 598: "There is no judicial function which makes larger drafts upon the fairness, common sense, sanity, and good judgment of the judge than that of fixing penalties for criminal offenses, nor one which more vitally affects the stability of free institutions. Excessive penalties are tyrannical in the court, and abhorrent to the public; on the other hand, penalties unduly mild seriously embarrass law enforcement and encourage infractions of the criminal laws." *Id.*, 46 S.E.2d, at 277.

The Oregon court in *Application of Cannon*, 203 Or. 629, 281 P.2d 233 (1955), found a life sentence for assault with intent to commit rape shocking, considering defendant's circumstances. It used a combination of shock and comparative other sentences in its analysis:

> The question presented is whether the penalty of life imprisonment for an assault with intent to commit rape under the circumstances of this case is proportioned to the offense, or is it so disproportioned to the offense as to shock the moral sense of all reasonable men as to what is right and proper? The question answers itself.

> How can it be said that life imprisonment for an assault with intent to commit rape is proportionate to the offense when the greater crime of rape authorizes a sentence of not more than 20 years? It is unthinkable, and shocking to the moral sense of all reasonable men as to what is right and proper, that in this enlightened age jurisprudence would countenance a situation where an offender, either on a plea or verdict of guilty to the charge of rape, could be sentenced to the penitentiary for a period of not more than 20 years, whereas if he were found guilty of the lesser offense of assault with intent to commit rape he could spend the rest of his days in the bastile. *Id.*, 281 P.2d, at 235.

Alaska's Supreme Court discussed disproportionate sentences in *Faulkner v. State*, Alaska, 445 P.2d 815, 818 (1968):

---

**9.** This jury had no option to recommend mercy, but the experienced probation officer did recommend the minimum sentence.

I would adopt what appears to be the minority view that the bare fact that a sentence is within the maximum prescribed by the legislature does not prevent it from violating the constitutional ban against cruel and unusual punishment. I recognize the fact that ordinarily a sentence with statutory limits should not be disturbed. But I also believe that it is conceivable that in extraordinary circumstances a sentence, although within the limits prescribed by law, may be so "disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice," and thus would amount to an unconstitutional cruel and unusual punishment. (Footnote omitted.)

The California Supreme Court decided a life sentence for a second conviction of indecent exposure violated proportionality reasoning:

[I]n California a punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. (Footnote omitted.) *In re Lynch,* 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 930 (1972).

While not finding the sentence imposed in *State v. Weigel,* 228 Kan. 194, 195, 612 P.2d 636 (1980) excessive, the Kansas Supreme Court wrote the following Syllabi:

13. Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

14. Some of the criteria which are to be considered in determining what is cruel or unusual punishment as to the length of a sentence include excessiveness, disproportionality, lack of necessity, unacceptability to society, and arbitrariness of infliction. None of these criteria are present in the present case

and the sentences imposed in this case are approved.

We also are supported by *Troyer v. State,* Alaska, 614 P.2d 313 (1980); *State v. Evans,* 73 Idaho 50, 245 P.2d 788 (1952); *Dembowski v. State,* 251 Ind. 250, 240 N.E.2d 815 (1968); *Workman v. Commonwealth,* Ky., 429 S.W.2d 374, 33 A.L.R.3d 326 (1968); *People v. Lorentzen,* 387 Mich. 167, 194 N.W.2d 827 (1972); *State v. Johnson,* 67 N.J.Super. 414, 170 A.2d 830 (1961); *Montalto v. State,* 51 Ohio App. 6, 199 N.E. 198, 200 (1935); *State v. Fortes,* 114 R.I. 161, 330 A.2d 404 (1975); *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971); *State v. Pratt,* 36 Wis.2d 312, 153 N.W.2d 18 (1967).

In *Wanstreet, supra,* we discussed application of our recidivist life sentence, but its teachings apply to Cooper. We stated in conclusion in *Wanstreet,* 166 W.Va. at 537–538, 276 S.E.2d at 214, "We cannot conceive of any rational argument that would justify this sentence ... unless we are to turn our backs on the command of our proportionality clause.... This would ignore the rationality of our criminal justice system where penalties are set according to the severity of the offense."

It would seem that a ten-year sentence would be appropriate; however, we remand to the trial court for resentencing according to his best judgment, consistent with this opinion.

Affirmed in part; reversed in part; remanded for resentencing.

## APPENDIX

In passing sentence, the trial court stated:

Well, the pre-sentence report is somewhat of a helpful guide to me. I did notice that the, one of the officers said something to the effect of a recommendation of a 10-year sentence in the case, and it's not very often that they make these recommendations. Sometimes they do, and sometimes the officer will make a recommendation like that to sentence somebody to so many years and punish them.

The minimum sentence that could be given in this case is 10 years, and apparently the probation officer felt that I should give him the minimum sentence, and I don't view that at all as being the correct sentence. I think the sentence should be more punishment than that. So I'm going to ignore that part of the probation officer's recommendation. It's only a recommendation anyway, but I perceive that in all wisdom and in all justice that the sentence ought to be more severe than the 10 years.

Even in light of the defendant's age—he is quite young—I don't detect in his attitude, in any of his background or any of his characteristics that he has any contrition or remorse or regret at all for the commission of this offense.

The defendant has rejected his family ties, he has lived on the streets of Charleston, he has associated with hardened criminals, he has made a way of life out of breaking the law.

I think based on the totality of the circumstances, the evidence heard at the trial, the evidence gathered from the community, including but not limited to the relatives of the accused, recommendations gathered from people in the community, the police officers and others, and taking into account the public safety involved where it is my judgment that men like this, the defendant, contribute to the dangers of society so that it is not safe for people to walk the streets of this city and this community of Kanawha County, one is not free to walk about in this country for fear that persons such as the defendant at the bar will a [sic] assault them and rob them, beat them, and even though the defendant is a man of relatively young age, it's the judgment of this Court that I ought to give him a sentence greater than the amount prescribed as a minimum sentence.

I take the circumstances of this crime to be a crime of a vicious nature, a crime that the defendant committed and he has no apparent regret or remorse or contrition, feelings of contrition. Although it's certainly a hard thing for me to do—as I told someone this morning, every time I sentence someone, it takes a big piece out of me. And I'm sad that it comes upon me to pronounce the judgment in this case because I am dealing with a young man, but I also feel duty-bound to pass a judgment and sentence that in my conscience is a proper judgment and a just and fair punishment for the offense committed by the defendant.

Although it's with great sadness that I do so, I do pronounce that his sentence ought to be confinement in the penitentiary of this state for a period of 45 years; and I, therefore, do sentence the defendant to imprisonment in the penitentiary of this state for the conviction of this felony to a sentence of 45 years.

A proper officer will, therefore, as soon as is practicable, safely transport and convey the prisoner from this county to the penitentiary of this state and there to be kept in a manner provided by law.

The defendant will be just as well treated there as his circumstances permit and his conduct warrants it, and he will be released from that institution whenever in the opinion of the Board of Probation and Parole it is determined that it is safe to release him upon society.

I hope and pray that this defendant will not ever commit a horrible crime or any crime in the future, but he has bent his characteristics and his life in such a twisted way that I have great fears that he is a man of vicious character and he has a heart that's fatally bent upon mischief.

It's with every bit of reason as well as just punishment, it's also for the reason of protection of society that I impose such a long and stern sentence in this case, but I believe that society needs to be protected from this man, and I believe that this man needs a long period of incarceration in order to attempt to change his characteristics.

But, at any rate, you will be released from that institution whenever in the opinion of the Board of Probation and Parole it is determined that he is proper to be released.