**FILED**

**August 27, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
**Petitioner Below, Respondent**

**vs.) No. 20-0011** (Raleigh County 17-F-376-D)

**James G. Lowe Jr.,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner James G. Lowe Jr., by counsel G. Todd Houck, appeals the December 6, 2019, order of the Circuit Court of Raleigh County sentencing him to an aggregate fifty-year term of incarceration for three counts of first-degree robbery, one count of grand larceny, forty-one counts of fraudulent use of an access device, one count of petit larceny, and one count of malicious wounding as an accessory after the fact. The State of West Virginia, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April and May of 2017, petitioner, along with a co-defendant, robbed multiple women in Raleigh County, West Virginia. Petitioner's first victim was a sixty-one-year-old woman. Petitioner and his co-defendant drove through the Sam's Club parking lot slowly and grabbed her purse from her shopping cart as she loaded groceries into her vehicle. While she was not physically injured, she lost $2,800 dollars and a gold ring that were in her purse.[1]

---

[1] The $2,800 dollars constituted the proceeds from a recent car sale.

1

The second victim was a sixty-one-year-old woman shopping at a Kroger. Petitioner and his co-defendant ripped her purse from her arm and later used her credit cards without authorization.

Petitioner and his co-defendant robbed their third victim in a Walmart parking lot while the victim's husband and child were inside the store. The pair drove up to the woman, and one of them grabbed and pulled her purse with such force that her fingernails were ripped off.

Petitioner and the co-defendant committed their final robbery against an eighty-six-year-old woman in the parking lot of Hobby Lobby. The defendants drove up to the woman, grabbed her purse while they remained in the vehicle, and dragged her approximately fifteen feet in the parking lot. She suffered extensive injuries, including broken bones in her face, and she required hospitalization.

Petitioner was arrested later in May of 2017, but not before he and his co-defendant committed additional misdemeanor crimes. In September of 2017, petitioner was indicted on one count of grand larceny; five counts of felony conspiracy; three counts of first-degree robbery; forty-one counts of fraudulent use of an access device; one count of malicious wounding; one count of breaking and entering; and two counts of petit larceny.

Petitioner entered into a plea agreement, wherein he agreed to plead guilty to three counts of first-degree robbery; forty-one counts of fraudulent use of an access device; one count of grand larceny; one count of petit larceny; and one count of accessory after the fact to malicious wounding. The State agreed to dismiss five counts of felony conspiracy, one count of breaking and entering, and one count of petit larceny. The parties agreed to make arguments as to the appropriate sentence. The State noted that it would oppose petitioner's request to be sentenced to the Anthony Center.[2] Further, the State intended to seek two fifteen-year sentences and one thirty-year sentence for the three counts of first-degree robbery, for an aggregate sentence of sixty years. In December of 2018, petitioner pled guilty to the agreed-upon charges. The circuit court accepted petitioner's plea.

In February of 2019, the circuit court held the final sentencing hearing. Petitioner moved to be sentenced to the Anthony Center, which the State opposed while characterizing such a disposition as "lenient." The circuit court heard substantial argument as to sentencing. Petitioner requested to call three witnesses on his behalf, one of which he identified as an "addiction specialist."[3] The State objected and argued that, under Rule 32(c) of the West Virginia Rules of

---

[2] "Anthony Center" refers to the Anthony Correctional Center, which is a potential alternative sentence for young adult offenders between the ages of eighteen and twenty-five. Offenders are committed for a term of six months to two years and are released on probation if successful in completing the program's requirements. *See* W. Va. Code §§ 25-4-1 – 25-4-12.

[3] Petitioner's two other proposed witnesses were not identified.

Criminal Procedure, petitioner was not entitled to present witnesses in support of sentencing. When the circuit court pressed petitioner's counsel for rebuttal, counsel stated that he believed the court was allowed to hear witness testimony, but he did not have a citation in support of his position. Petitioner's counsel offered to proffer the addiction specialist's testimony, which the circuit court permitted. Thereafter, petitioner exercised his right to allocution, and the circuit court heard statements from petitioner's third and fourth victims.

Ultimately, the circuit court denied petitioner's motion for alternative sentencing. The circuit court provided the following explanation:

> This is one of the hardest cases I've had since I've been on the bench . . . . [W]hat you did over that month period of time, it's nothing shorter than a reign of terror. . . . It's clear that you guys targeted women . . . who were weak and vulnerable at the time. And so based on that, I just don't think I can grant an alternative sentence. I've given this long and serious thought, but I think if this had been one [instance of robbery], I absolutely could have done the Anthony Center, but because of the duration that this went on and the number of victims that occurred and there were crimes of violence against the person, I just - -  I don't think I'm in a position to send you to the Anthony Center.

The circuit court sentenced petitioner to consecutive sentences of ten, fifteen, and twenty-five years of incarceration for three counts of first-degree robbery for an aggregate sentence of fifty years of incarceration. The circuit court then sentenced petitioner to an indeterminate one-to-ten year term of incarceration for grand larceny; ten years of incarceration for each count of fraudulent use of an access device; one day of incarceration for petit larceny; and five years of incarceration for accessory after the fact to malicious wounding. The circuit court ordered that those terms of incarceration would run concurrent to one another and concurrent to petitioner's aggregate fifty-year sentence for the three first-degree robbery convictions. The circuit court's decision was memorialized by its December 6, 2019, order, which petitioner now appeals.[4]

On appeal, petitioner first argues that the circuit court erred in denying him an opportunity to call witnesses at the sentencing hearing. He asserts that, had the circuit court heard from these witnesses, it would have been "better informed" to determine an appropriate sentence. In support, petitioner cites to Rule 32(c)(1) of the West Virginia Rules of Criminal Procedure, which provides, in relevant part:

At the sentencing hearing, the court must afford counsel for the defendant and for

---

[4]In June of 2019, petitioner filed a motion for reduction of sentence, pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure. The circuit court held a hearing on the motion in August of 2019, and it issued an order in December of 2019 that denied petitioner's motion. Soon after, the circuit court resentenced petitioner for the purposes of appeal, and this appeal followed.

the state an opportunity to comment on the probation officer's determinations and other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections.

Petitioner's reliance on Rule 32(c)(1) is misplaced. Petitioner did not assert below, nor has he asserted on appeal, that the witnesses in question would address any objections to the presentence investigation report. Indeed, it appears from the record that the parties resolved any disputes with the contents of the presentence investigation report by agreement during the sentencing hearing. Petitioner has failed to cite to any other authority under which he would have been permitted to present witnesses at the sentencing hearing, and in the absence of such authority, we find no merit to petitioner's first assignment of error.

In petitioner's remaining assignment of error, he argues that the circuit court imposed an unconstitutionally disproportionate sentence to the crimes for which he was convicted. He asserts that he was a young adult offender (twenty-three years old at the time of his offenses) with no prior felony record. Petitioner asserts that the current offenses were motivated by his drug addiction. According to petitioner, his addiction would be better treated at the Anthony Center. Petitioner urges this Court to consider the nature and circumstances of his crimes and find that his sentence is unconstitutionally disproportionate to those crimes.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Adams*, 211 W. Va. 231, 565 S.E.2d 353 (2002). We have also held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Because West Virginia Code § 61-2-12(a) does not set a maximum term for first-degree robbery,[5] proportionality review is available to petitioner pursuant to Article III, Section 5 of the West Virginia Constitution.[6]

---

[5]West Virginia Code § 61-2-12(a)(1) provides, in pertinent part, that "[a]ny person who commits . . . robbery by: (1) [c]ommitting violence to the person, including, but not limited to . . . beating . . . is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years."

[6]In Syllabus Points 3 and 4 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981), we held:

"Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syllabus Point 8, *State v. Vance*, [164] W.Va. [216], 262 S.E.2d 423 (1980).

(continued . . .)

4

We have identified two tests to determine whether a sentence is so disproportionate to a crime that it violates the state constitution. *State v. Cooper*, 172 W. Va. 266, 272, 304 S.E.2d 851, 857 (1982). As we explained in *Cooper*,

> The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):
>
>> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

172 W. Va. at 272, 304 S.E.2d at 857.

We now address the subjective test and note that "'[i]n making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense.' *State v. Adams*, 211 W. Va. 231, 233, 565 S.E.2d 353, 355 (2002)." *State v. Patrick C.*, 243 W. Va. 258, 263, 843 S.E.2d 510, 515 (2020). To petitioner's credit, he was of youthful age at the time of the crimes and had a limited criminal record prior to the instant offenses, which are factors that may lead a court to impose a more lenient sentence. However, petitioner committed his crimes over a month-long "reign of terror." During this time, petitioner and his co-defendant decided, on multiple occasions, to travel to parking lots and target "weak and vulnerable" women. The pair overpowered the women with physical force to steal their purses, physically and mentally injuring those women.

In addressing each first-degree robbery sentence in turn, we note that petitioner was sentenced to ten years of incarceration for the first-degree robbery of his first victim. As ten years of incarceration is the statutory minimum for this offense, this sentence does not shock the

---

> While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is . . . no fixed maximum set by statute . . . .

conscience. The second sentence, a fifteen-year term of incarceration for the first-degree robbery of the second victim, also does not shock the conscience. The record reflects that petitioner and his co-defendant ripped the woman's purse from her possession with such force that her fingernails were ripped off. Additionally, this robbery occurred later in petitioner's crime spree. We find these factors warrant this increased sentence. Finally, the third, and most egregious robbery, was that of the eighty-six-year-old woman. The robbery occurred after petitioner and the co-defendant had already committed multiple felonious acts, and the victim suffered substantial injuries requiring hospitalization. Under these circumstances, this twenty-five-year sentence does not shock the conscience.

Finally, petitioner argues that his case is similar to *Cooper* wherein we reversed a forty-five-year sentence for robbery imposed upon a nineteen-year-old homeless man. However, the circumstances of *Cooper* are distinguishable from those in petitioner's case. In *Cooper*, a young adult defendant with no prior criminal record received a forty-five-year sentence for a single first-degree-robbery conviction, where the victim was not seriously or permanently injured. Unlike the defendant in *Cooper*, petitioner committed multiple robberies causing increasing levels of physical injury to his victims. The longest sentence that petitioner received, twenty-five years, was based on the serious injuries to his eighty-six-year-old victim, as well as the length of petitioner's crime spree. Accordingly, we find petitioner's comparison to *Cooper* to be unpersuasive.

With regard to the objective test set forth in Syllabus Point 5 of *Wanstreet*, we have stated:

The first consideration of the objective test is the nature of the offense for which the appellant was convicted and the legislative purpose behind the statutory punishment. As we just noted, the crime for which the appellant was convicted was certainly of a violent nature. In addition, we have previously observed that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *State v[.] Ross*, 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990). As a result, the Legislature has provided circuit courts with broad discretion in sentencing individuals convicted of aggravated robbery or attempted aggravated robbery. In fact, "'[t]he Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for armed robbery, beyond ten.'" *State v. Woods*, 194 W.Va. 250, 254, 460 S.E.2d 65, 69 (1995) [(]quoting *State ex rel. Faircloth v. Catlett*, 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980)[)].

*State v. Williams*, 205 W. Va. 552, 555, 519 S.E.2d 835, 838 (1999). In *Williams*, this Court considered sentences for robbery that were upheld in numerous jurisdictions to find that "[g]iven the offenses involved in the cases cited above, and in light of the respective sentences imposed, we believe that the appellant's sentence in the case *sub judice* is constitutionally proportionate to the character and degree of the offense for which she was convicted." *Id.* at 558, 519 S.E.2d at 841. Applying the principles set forth in *Williams* to the facts of the instant case and petitioner's

sentences for first-degree robbery, we conclude that petitioner's sentences were constitutionally proportionate to the character and degree of the offenses for which he was convicted.

Finally, we find no error in petitioner's sentences for fraudulent use of an access device, grand larceny, malicious wounding, and petit larceny. Notably, in contrast to first-degree robbery, which has no statutory maximum term of incarceration, these crimes have statutorily set terms of incarceration. *See* W. Va. Code § 61-3C-13(c) (permitting a term of incarceration of not more than ten years for fraudulent use of an access device); W. Va. Code § 61-3-13(a) (permitting a term of incarceration of not less than one year or more than ten years for grand larceny); W. Va. Code § 61-2-9(a) (permitting a term of incarceration of not less than two or more than ten years for malicious wounding); W. Va. Code § 61-3-13(b) (permitting a term of incarceration not to exceed one year for petit larceny). As noted above, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *Goodnight*, 169 W. Va. at 366, 287 S.E.2d at 505, Syl. Pt. 4. The circuit court sentenced petitioner within the statutory limits for each count, and petitioner has not identified any impermissible factors upon which the court based its sentencing. Thus, the sentences are not subject to appellate review. We, therefore, affirm the circuit court's December 6, 2019, sentencing order.

Affirmed.

**ISSUED**: August 27, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**
Justice William R. Wooton

7