**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 24-2** (Jefferson County CC-19-2018-F-27)

**Devon Woodward,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Devon Woodward appeals the December 4, 2023, order entered by the Circuit Court of Jefferson County that revoked his supervised release.[1] On appeal, the petitioner argues that his sentence is constitutionally disproportionate. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

In July 2018, the petitioner pled guilty to one count of third-degree sexual assault,[2] and he was sentenced to one to five years of imprisonment and five years of supervised release. The petitioner was released from prison in January 2022 after serving his underlying sentence.

In December 2022, the State filed a petition to revoke the petitioner's supervised release, alleging that he was arrested for fishing without a license in May 2022; assault and brandishing a deadly weapon in November 2022; and first-offense driving under the influence (DUI), failure to maintain lane, and driving without an operator's license in December 2022. After holding a hearing on the petition in February 2023, the circuit court revoked the petitioner's supervised release and imposed one year of imprisonment with credit for time served. The petitioner was released from jail in June 2023 after serving approximately six months of imprisonment for that violation.

---

[1] The petitioner appears by counsel Michael Santa Barbara. The State appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

[2] *See* W. Va. Code § 61-8B-5(a)(2) (providing that a person is guilty of third-degree sexual assault "when . . . the person being 16 years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than 16 years old and who is at least four years younger than the defendant").

In October 2023, the State filed a second petition to revoke supervised release after the petitioner's arrest in September 2023 for speeding in a school zone and driving with a license that was revoked for DUI. At a hearing on the petition held in December 2023, the petitioner admitted the allegations in the second revocation petition. The petitioner's probation officer, James Tesh, testified that he had supervised the petitioner for approximately two years and characterized the petitioner as one of his "problem children compared to the other people I supervise." Mr. Tesh also stated that the petitioner "really needs to get his life together[,]" and he was "no longer amenable to supervised release" because "he's a danger to the community[.]" Mr. Tesh stated that "since [the petitioner has] been under my supervision it's a constant struggle trying to get him to stay employed at one spot." On cross-examination, Mr. Tesh admitted that the petitioner had completed anger management classes, provided negative drug screens, and had attended therapy, but "[n]ot as frequently as he should[.]" Mr. Tesh also admitted that the petitioner turned himself in to authorities after the second petition was filed. After hearing the arguments of counsel, the court sentenced the petitioner to five years of imprisonment with 250 days' credit for time served. The petitioner now appeals.

In his single assignment of error, the petitioner argues that the circuit court erred in sentencing him to five years of imprisonment with 250 days' credit for time served after revoking his supervised release pursuant to West Virginia Code § 62-12-26, which provides, in relevant part:

(a) Notwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve, article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b . . . shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years[;]

. . . .

(g) The court may:

. . . .

(3) Revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release[.]

The petitioner does not challenge the circuit court's finding that he violated the terms of supervised release, nor does he dispute that those violations warranted revocation; instead, the petitioner asserts that the length of the court's revocation sentence was excessive and

disproportionate to the nature of his supervised release violations. He contends that imposition of such a sentence is prohibited by Article III, Section 5 of the West Virginia Constitution.

> When reviewing an order modifying or revoking a defendant's supervised release under West Virginia Code § 62-12-26(h), we apply a three-pronged standard of review. We review the circuit court's final order and decision to modify or revoke a defendant's supervised release under an abuse of discretion standard; we review challenges to findings of fact under a clearly erroneous standard; and we review questions of law and interpretations of statutes de novo.

Syl. Pt. 1, *State v. White*, 249 W. Va. 532, 896 S.E.2d 698 (2023).

Similarly, we review "sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). "Where the issue involves the application of constitutional protections, our review is de novo." *State v. Patrick C.*, 243 W. Va. 258, 261, 843 S.E.2d 510, 513 (2020) (citations omitted). Furthermore, "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). We ordinarily limit proportionality reviews to sentences "where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). However, we often review supervised release sentences for proportionality. *See, e.g.*, *State v. Brautigam*, ___ W. Va. ___, ___, 922 S.E.2d 764, 770 (2025).

Like our other proportionality reviews, we apply two tests to evaluate the proportionality of a sentence issued upon the revocation of supervised release. *Id.* at ___, 922 S.E.2d at 770-71. "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v. Cooper*, 172 W. Va. 266, 272, 304 S.E.2d 851, 857 (1983). The second is an objective inquiry, requiring us to give consideration "to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Id.* (quoting *Wanstreet*, 166 W. Va. at 523-24, 276 S.E.2d at 207, Syl. Pt. 5, in part). When considering these two tests, we bear in mind the relation of the purposes of supervised release—including rehabilitation, conditional liberty, and the protection of society—to the corresponding breach of the court's trust by a defendant and the resulting revocation term of imprisonment. *See Brautigam*, ___ W. Va. at ___, 922 S.E.2d at 771-72 (discussing the purposes of supervised release). And, when considering the purposes of supervised release, alongside the petitioner's actions while on supervised release that resulted in multiple revocations, here we find that the circuit court's sentence of five years of imprisonment resulting from the second revocation was not disproportionate under either test.

For the subjective test, this Court examines whether the sentence is "so disproportionate to the crime" that "it shocks the conscience and offends fundamental notions of human dignity" compared to the "character and degree of an offense." *Cooper*, 172 W. Va. at 267-68, 304 S.E.2d at 852, Syl. Pt. 5, in part. Here, the petitioner's revocation sentence is not subjectively disproportionate because it does not shock the conscience. *See id*. Following his original conviction for third-degree sexual assault, which gave rise to his term of supervised release, the circuit court gave the petitioner multiple chances to comply with the supervised release requirements. The court imposed a lenient term of imprisonment after his first revocation, where the court found he violated multiple terms of his supervised release, including driving without a license and threatening a group of people with a knife, which breached the court's trust. After his release from the first revocation term of imprisonment, he again demonstrated an inability to comply with the terms of his supervised release. The petitioner violated the conditions of his supervised release by driving on a suspended license and speeding in a school zone, shortly after his earlier revocation which had been in part based on a similar traffic offense, thus failing to "demonstrate his ability to rehabilitate and safely reenter society." *Brautigam*, ___ W. Va. at ____, 922 S.E.2d at 773. His actions "demonstrate his continued inability to conform his behavior on supervised release to the circuit court's requirements." *Id*. Given the petitioner's continuing violations and multiple breaches of the court's trust, the court's sentence does not shock the conscience.

To determine whether a sentence is objectively disproportionate, we consider the "nature of the offense" and "the legislative purpose behind the punishment," and compare the punishment "with what would be inflicted in other jurisdictions," and "with other offenses within the same jurisdiction." *Wanstreet*, 166 W. Va. at 523-24, 276 S.E.2d at 207, Syl. Pt. 5, in part. The petitioner argues that his sentence is disproportionate because the revocation is based upon what he characterizes as "minor traffic offenses." The petitioner also contends that the maximum penalty for causing bodily injury while driving under the influence is one year of imprisonment, *see* W. Va. Code § 17C-5-2(d), and that the penalties for speeding and driving revoked for DUI in Virginia, Maryland, and Pennsylvania are like those in West Virginia. However, these comparisons are not relevant to determining whether the petitioner's sentence was constitutionally proportionate because the petitioner does not analyze these offenses in the context of supervised release violations. Instead, applying the *Wanstreet* factors here, we consider the defendant's violations of the terms and conditions of supervised release and corresponding breach of the court's trust when evaluating the resulting revocation sentence. *See Brautigam*, ___ W. Va. at ___, 922 S.E.2d at 773-74. The petitioner's history of noncompliance with the conditions of supervised release is analogous to other cases in which we affirmed longer terms of imprisonment upon revocation after multiple breaches of the courts' trust. *See State v. Payne*, No. 17-0195, 2018 WL 1444287, at *4-5 (W. Va. Mar. 23, 2018) (memorandum decision) (affirming a twenty-four-year sentence following supervised release revocation); *State v. Winning*, No. 17-0921, 2018 WL 4944416, at *3-4 (W. Va. Oct. 12, 2018) (memorandum decision) (affirming a twenty-year sentence following supervised release revocation). Considering the purpose of supervised release and other revocation sentences in West Virginia, the petitioner's sentence was not objectively disproportionate. Therefore, we find that the circuit court did not abuse its discretion when sentencing him to a five-year term of imprisonment upon the revocation of his supervised release.

4

For the reasons stated, we affirm.

Affirmed.

**ISSUED:** February 18, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III